UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELLE POWELL,

    Plaintiff,

Case No. 17-10588

v.

HON. AVERN COHN

NEW HORIZONS LEARNING
SOLUTIONS CORPORATION, and
MARK MCMANUS JR.,

    Defendants.

_____/

**ORDER AND MEMORANDUM DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. 22)**

### I. INTRODUCTION

This is an employment discrimination case. Plaintiff, Michelle Powell ("Powell"), is suing here former employer New Horizons Learning Solutions ("NHLS") and Mark McManus Jr. ("McManus") for gender discrimination and harassment. Powell's complaint states the following claims:

1. Gender Discrimination and Harassment under Title VII (42 U.S.C. § 2000e *et seq.*),
2. Hostile Work Environment under Title VII (42 U.S.C. § 2000e *et seq.*),
3. Retaliation under Title VII (42 U.S.C. § 2000e *et seq.*),
4. Violation of the Equal Pay Act of 1963,
5. Assault and Battery,
6. Hostile Work Environment, Sexual Harassment and Constructive Discharge under the Elliot-Larsen Civil Rights Act (ELCRA).
7. Retaliation under ELCRA
8. Unequal Pay under ELCRA

(Doc. 1). Powell seeks compensatory damages, punitive damages, and attorney's fees.

In response, NHLS filed counter-claims for breach of contract and unjust enrichment. (Doc. 10). At the close of discovery, NHLS and McManus filed a motion for summary judgment as to Powell's federal claims (all claims except assault and battery). (Doc. 22). For the following reasons, the motion for summary judgment is DENIED.

## II. BACKGROUND[1]

### A. NHLS Harassment and Work Environment

Powell was hired by NHLS on May 3, 2006, as an Executive Administrative Assistant. During her employment, Powell was promoted several times and received salary increases. Her ultimate position at the time she stopped working for NHLS was "Human Resources Director," with a salary of $84,000 a year.

Powell says that during her employment at NHLS, she was subject to sexual harassment and a hostile work environment. To support her claim, Powell proffers many incidents of harassment, including:

- An email from McManus Sr., the former CEO of NHLS, that contained pornographic images,
- A comment from McManus Sr. saying, "I can't concentrate right now; your boobs are distracting me,"
- Frequent sexual comments about Powell's body and how good she looked by former McManus Sr.,
- A sexual comment by Scott McLean, NHLS Chief Administrative Officer, in front of other employees about Powell's attire,
- Lewd jokes and remarks from Eric Strouse, NHLS General Manager, such as "You know how to handle a pole, don't you [Powell]?"
- Video calls from McManus to Powell where McManus appeared to be naked in bed,

---

[1] The record before the Court is poorly developed and is riddled with irrelevant facts. Moreover, the parties almost exclusively use affidavits and deposition transcripts to support their positions, which has created a he-said-she-said factual record that renders summary judgment inappropriate. For the sake of clarity, this section focuses on the relevant facts construed in the light most favorable to Powell.

2

- An incident during a management meeting in which McManus mimicked a "blow-job" in front of co-workers in response to the news that Powell's husband had bought her a new car,
- Inappropriate contacts with the president of another company in the workplace, in which he would frequently hug Powell, message her neck, and touch her leg,
- A text message from Tynan Fischer, NHLS Chief Operating Officer, that stated he wanted to take Powell on vacation,
- A battery committed by McManus during a company cruise when he grabbed Powell's buttocks under her clothing and touched her genitals,
- An assault committed by McManus when he pulled Powell into a secluded area of his house during a work party and attempted to kiss her.

(Doc. 30). Powell supports her claims with affidavits and depositions from various sources, such as previous NHLS employees and close family members who witnessed many of the above incidents. (Doc. 26, Ex. 1, 3, 4, 5, 6; see also, Ex. 2, 20, 21).

### B. Circumstances Surrounding Powell's "Constructive Discharge"

Powell says that McManus' harassment intensified in May and June of 2015, which resulted in a sexual battery in May of 2015 and a sexual assault in June of 2015 during work events. Powell says that these sexual advances by McManus were unwelcome and rejected.

Powell says that shortly after McManus' sexual battery, he decided to replace/demote her by creating a new executive position within NHLS. The new position he created was titled "Vice President of Human Resources;" a job that had significant overlap with Powell's responsibilities and created an extra layer of management between Powell and McManus. Essentially, the new position had the effect of replacing Powell as head of the Human Resources department at NHLS.

Although the job search to fill this position took place in July of 2015, shortly after the alleged battery on the company cruise, the position was not actually filled until six months later. During this six-month period, Powell says that McManus and other

3

executives began excluding her from management activities in which she formerly participated. Powell says that this exclusion, and the ongoing search for a Vice President of Human Resources, is evidence of McManus' retaliation against her for rejecting his sexual advances.

NHLS eventually hired Matt Pulliam ("Pulliam") as Vice President of Human Resources. Pulliam's salary was $160,000, which was almost twice the amount Powell was being paid at the time. Powell says that the hiring of Pulliam was "the straw that broke the camel's back" and was "a triggering event." (Doc. 26). Powell resigned the day after Pulliam was hired.

NHLS responds by saying that Powell was not performing satisfactory work, and that Pulliam was hired to handle the recent increase in employee size. (Doc. 22-5, p. 4). However, Powell points to the fact that Pulliam resigned from the company 11 months after his start date and, since his resignation, NHLS has not hired another Vice President of Human Resources. In fact, McManus states that NHLS replaced Pulliam with Ellen Bradly, who holds the title Human Resources Manager, which is akin to Powell's previous position and title. (Doc. 22-5, p. 7). Powell says this is evidence that the position was created simply to replace her as Human Resources Director.

NHLS also says that the pay disparity was because Powell was not part of the "Executive Team." However, Powell has offered enough evidence to create a genuine dispute as to whether she was considered a part of the executive team within NHLS as the head of the Human Resources department. (See, e.g., Doc. 26, Ex. 5, 6, 20).[2]

---

[2] The Court mentions this fact because it is relevant to the question of whether Pulliam was a comparable for the purposes of Powell's equal pay claims. The Court does not,

### III. LEGAL STANDARD

A motion for summary judgment will be granted if the moving party demonstrates that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986)). In doing so, the Court "must view the evidence in the light most favorable to the non-moving party." Emp'rs Ins. of Wausau v. Petrol. Specialties, Inc., 69 F.3d 98, 101–02 (6th Cir. 1995). "Circumstantial evidence, like the timing of events or the disparate treatment of similarly situated individuals," is considered. Thaddeus-X v. Blatter, 175 F.3d 378, 399 (6th Cir. 1999).

### IV. ANALYSIS

*A. Respondeat Superior*

Powell seeks to hold NHLS liable for the actions of McManus and other NHLS executives under the theory of *respondeat superior*. In Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998), a female employee was harassed in the workplace by the vice president of another department and sought to hold the company liable. Id. at 748. The evidence involved three derogatory remarks made by the vice president in the

---

however, agree with Powell that her salary should be compared to other members of the executive team for the purposes of her equal pay claims.

workplace. Id. During her employment, the female employee did not tell anyone about the vice president's conduct. Id. The employee eventually quit in response to a different supervisor's nondiscriminatory workplace action. Id. Nevertheless, she made claims of constructive discharge and said that her quitting was attributable to the harassment she endured. Id. at 748–749. In addressing her claims, the Supreme Court stated that a company can be held liable "where the employer acts with tortious intent, and indirect liability, where the agent's high rank in the company makes him or her the employer's alter ego." Id. at 758. Thus, "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate authority over the employee." Id. at 765.

Here, McManus and other executive members can create liability for NHLS because they are considered the company's alter ego. Similar to Burlington, the evidence in this case involves derogatory remarks and contacts directed at Powell in the workplace; the remarks and contacts were committed by Powell's superiors; Powell did not report the conduct to anyone within the company, and; Powell quit as a reaction to a non-discriminatory company action. Like Burlington, Powell can nevertheless make claims of constructive discharge against NHLS based on McManus' conduct because his high rank in the company makes him the alter ego of NHLS. Because the acts of harassment were committed by, or endorsed by, McManus—and he is considered the alter ego of NHLS—*respondeat superior* liability is appropriate.

It bears mention that Burlington also established an employer's defense to sexual harassment claims. The Supreme Court said that the elements of an affirmative defense are "(a) that the employer exercised reasonable care to prevent and correct

promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer to avoid harm." Id. However, the affirmative defense in this case would fail. First, Powell has created a genuine dispute as to the first element because she says McManus, as a representation of NHLS, endorsed the harassing behavior. Additionally, the second element of the defense is problematic here because it would have been futile for Powell to report her harassment. This is because as the Human Resources Director she could only report to the executive team, which is comprised of the same people allegedly harassing her. Accordingly, the Court finds Powell had no duty to report harassment to her harassers.

### B. Powell's Constructive Discharge

In the Sixth Circuit, to prove a constructive discharge an employee must show that the employer "deliberately create[d] intolerable working conditions, as perceived by a reasonable person, with the intention of forcing the employee to quit and the employee must actually quit." Moore v. KUKA Welding Sys. & Robot Corp., 171 F.3d 1073, 1080 (6th Cir. 1999).

Whether harassment is sufficiently severe or pervasive, for constructive discharge purposes, depends on a totality of the circumstances test. Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993). This inquiry is highly fact specific and contextual. Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75 (1998) ("workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. Common sense, and appropriate sensitivity to context, will enable courts and juries to distinguish between simple teasing and roughhousing . .

. [with] severely hostile or abusive [conduct].); see also, Held v. Gulf Oil Co., 684 F.2d 427, 432 (6th Cir. 1982) (finding that an employee was constructively discharged when "an environment of sexual bias was tolerated and fostered by her employer"). "The totality of the circumstances test must be construed to mean that even where individual instances of sexual harassment do not on their own create a hostile environment, the accumulated effects of such incidents may result in a Title VII violation." E.E.O.C. v. Finish Line, Inc., 915 F.Supp.2d 904, 921 (M.D. Tenn. 2013).

Here, Powell has offered enough evidence to permit a jury finding that she was constructively discharged. The evidence tends to show that harassment was a regular occurrence within the workplace. See, e.g., (Doc. 26, Ex. 1, 2, 3, 4, 5, 6, 20, 21). Accordingly, Powell is entitled to a jury on the issue of whether the harassment, if any, led to intolerable working conditions.

*Sexual Harassment and Hostile Work Environment under Title VII and the ELCRA*

A plaintiff must establish the same elements under both Title VII and Michigan's ELCRA when claiming discrimination based on sex. Hensman v. City of Revierview, 316 Fed. Appx. 412, 417 (2009); see also, Sotoj v. Nashville Aquarium, Inc., 2016 WL 3568591, at *7 (M.D. Tenn. July 1, 2016).

> To establish a *prima facie* case of sexual harassment or a sexually hostile work environment under Title VII, the plaintiff must prove: (1) that she is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based on her sex; (4) that the harassment created a hostile work environment; and (5) that the employer failed to take reasonable care to prevent or correct any sexual harassing behavior.

Finish Line, 915 F.Supp.2d at 916 (citing Bowman v. Shawnee State Univ., 220 F.3d 456, 462–63 (6th Cir. 2000)).

Here, Powell has satisfied her *prima facie* case. First, Powell is a female, and as such is a member of a protected class for Title VII and ELCRA purposes. Second, she has created a material dispute regarding whether she was subjected to unwelcome sexual harassment. See (Doc. 26, Ex. 1, 2, 3, 4, 5, 6, 20, 21). Third, the alleged harassment was sexual in nature, which satisfies the requirement that the harassment be based on her sex. Forth, Powell has created a reasonable dispute regarding whether the harassment created a hostile work environment. Lastly, Powell has submitted evidence that tends to show that NHLS failed to prevent or correct harassing behavior because high-ranking executives of NHLS were responsible for fostering a hostile work environment atmosphere. See (Doc. 26, Ex. 1, 5, 6, 21). Therefore, Powell has successfully established her *prima facie* case of sexual harassment and hostile work environment under Title VII and the ELCRA.

### *Retaliation under Title VII and the ELCRA*

To prove retaliation, Powell must show: (1) that she engaged in protected activity, (2) NHLS knew of her protected activity, and (3) NHLS thereafter took an adverse employment action against her, and (4) there is a causal connection between the protected activity and the adverse employment action. Williams v. Serra Chevrolet Automotive, LLC, 4 F.Supp.3d 865, 877 (2014). A protected activity is considered the opposition of any practice that is made unlawful by Title VII. Littlejohn v. City of New York, 795 F.3d 297, 316 (2015).

Powell says that McManus retaliated against her after she rejected his sexual advances during the June 2015 company cruise. First, Powell says that she engaged in protected activity because she rejected the sexual advances of her boss at a work

event. Second, NHLS knew of the protected activity because not only was McManus the alleged harasser (who is an alter ego of NHLS) but depositions reveal that other employees witnessed McManus put his hand on Powell's buttocks. See (Doc. 26, Ex. 20, 21). Third, Powell says that the job search and subsequent creation of the replacement-position (Vice President of Human Resources) took place shortly after the cruise incident, which was an adverse employment action (constructive discharge). Lastly, Powell says that the temporal proximity of the Vice President of Human Resources job search/creation, as well as the exclusionary actions taken by the executive team in the following months, creates a causal connection to her rejecting McManus during the company cruise. See also Conti v. American Axle and Mfg., Inc., 326 Fed.Appx. 900, 910–11 (6th Cir. 2009) (quoting Ercegovich v. Goodyear Tire and Rubber Co., 154 F.3d 344, 356 (6th Cir. 1998) ("Discriminatory statements may reflect a cumulative managerial attitude among the defendant-employer's managers that has influenced the decisionmaking process for a considerable time. Thus, management's consideration of an impermissible factor in one context may support the inference that the impermissible factor entered into the decisionmaking process in another context.")). Therefore, Powell has successfully established claims of retaliation under the ELCRA and Title VII.

### *Unequal Pay Based on Gender*

To establish a *prima facie* case of wage discrimination, a plaintiff must show "that an employer pays different wages to employees of opposite sexes for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." Conti, 326 Fed.Appx. at 913–14

(quoting Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974)) (internal quotations omitted). "Equal work does not require that the jobs be identical, but only that there exist[s] substantial equality of skill, effort, responsibility and working conditions." Id. (quoting Buntin v. Breathitt County Bd. Of Educ., 134 F.3d 796 799 (6th Cir. 1998)) (internal quotations omitted).

If a female employee is paid less that a male predecessor, the Sixth Circuit permits claims of unequal pay. In Conti v. American Axle, the Sixth Circuit found that a female employee who was paid less than her male predecessor could sustain a claim of unequal pay, even though her male predecessor had "greater experience, education, and other qualifications." Conti, 326 Fed.Appx. at 914. In its reasoning, the Sixth Circuit stated that a lower salary for a female successor is alone sufficient to make out a claim of wage discrimination so long as the positions held by each employee were "substantially similar."

Here, a reasonable jury could find that Powell was essentially replaced by Pulliam as head of the Human Resources department within NHLS, and accordingly, the disparity in pay permits Powell's wage discrimination claims. Similar to Conti, a jury could find that the positions held by Powell and Pulliam were "substantially similar," and that Pulliam was effectively a successor to Powell. Thus, Powell has successfully established claims for wage discrimination because she has "raised a material issue as to whether she performed substantially equal work for less pay." Id. at 915.

## V. CONCLUSION

The Court has reviewed the record in the light most favorable to Powell and finds triable issues of fact material to her claims. In federal court, a motion for summary judgment can be denied if "the judge has doubt as to the wisdom of terminating the case before a full trial." <u>Veillon v. Exploration Services, Inc.</u>, 876 F.2d 1197, 1200 (5th Cir. 1989). Because the evidence and arguments have not been particularly helpful in guiding the Court trough the issues in this case, the Court doubts the wisdom of granting summary judgment. Accordingly, the Motion for Summary Judgment (Doc. 22) is DENIED.

SO ORDERED.

<u>SAvern Cohn</u>
 AVERN COHN
 UNITED STATES DISTRICT JUDGE

Dated: 12/13/2018
Detroit, Michigan